UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **KENNETH KEITH MILTON** | **CIVIL ACTION NO. 19-0214** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **PAT SMITH, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Plaintiff Kenneth Keith Milton, a prisoner at Tensas Parish Detention Center proceeding pro se and in forma pauperis, filed the instant proceeding on February 20, 2019, under 42 U.S.C. § 1983. He names Warden Pat Smith, Corporal Marsh, Major Johnson, and Ms. Book as Defendants.[1] For the following reasons, Plaintiff's claims should be dismissed.

**Background**

Plaintiff alleges that, although he has been eligible for work release since November 28, 2016, Defendants refuse to approve him for work release because he once pled guilty to "aggravated misdemeanor sex . . . in 1998" and is now considered a sex offender. [doc. # 1, pp. 3-4]. Plaintiff asked Corporal Marsh and Major Johnson about securing a work release position, and both responded, "Inside Job Only," presumably meaning that Plaintiff could work only within the facility. [doc. #s 1, pp. 3-4; 9-1, p. 2]. Plaintiff alleges that Ms. Book, who taught "good time classes," informed him that sex offenders are not eligible for work release. [doc. # 1, p. 5]. Defendants, according to Plaintiff, have denied him due process. *Id.* at 3.

Plaintiff also claims, tacitly, that Defendants denied him due process by refusing to place

---

[1] This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

him in more than one rehabilitation, reentry, or "good time class[]." [doc. #s 1, pp. 3-5; 1-2, p. 2].

Plaintiff further suggests that, by refusing to approve him for work release, Defendants violated his right to equal protection. [doc. #s 1, p. 3; 1-2, p. 1]. Defendants have allegedly treated him unfairly because, although he is a sex offender, he was convicted over twenty years ago in Iowa, he accepted a plea bargain, his sex crime was a misdemeanor, he has not committed another sex crime, and other prisoners who secured work release have lengthier sentences than Plaintiff and have committed both sex crimes and crimes more severe than the crime to which he pled guilty. [doc. #s 1, p. 6; 1-2, p. 2]. He maintains that Defendants are discriminating against him and "all sex offenders . . . ." [doc. # 1-2, p. 1]. He attaches a letter he received from the Louisiana Department of Public Safety and Corrections ("DPSC"), in which the DPSC informed him that he was "denied work release due to criminal history." [doc. # 9-1, p. 1].

Plaintiff asks the Court to order Defendants to approve him for both work release and two classes or, in the alternative, to award $150,000.00. *Id.* at 7.

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] See *Martin v. Scott,* 156 F.3d 578, 579-

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of

Case 3:19-cv-00214-TAD-KLH Document 11 Filed 04/10/19 Page 4 of 15 PageID #: 57

the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Due Process**

Plaintiff claims that, by refusing to approve him for work release, Defendants have denied him due process. As a prisoner, however, Plaintiff lacks a property interest in work release. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (citing with approval other courts of appeals' consistent holdings that "an inmate's expectation of keeping a specific prison job, *or any job*, does not implicate a protected property interest.") (emphasis supplied); see *Batiste v. Tubbs*, 2015 WL 6438851, at *3 (W.D. La. Sept. 25, 2015), report and recommendation adopted, 2015 WL 6441103 (W.D. La. Oct. 21, 2015).

Plaintiff also lacks a liberty interest in work release. In *Welch v. Thompson*, 20 F.3d 636 (5th Cir. 1994), the United States Court of Appeals, Fifth Circuit, determined that LA. REV. STAT. 15:1111(A), which authorizes the DPSC "to establish and administer a work release program for inmates of any institution under the jurisdiction of the department[,]" does not create a liberty interest:

> The statute's overall scheme, while not entirely deferential, entrusts the Department with the actual operation of the work release program. The statute does not dictate to the Department whom it must put on work release. While it is true that some discretion in some aspects of the process is not fatal to finding a liberty interest, we conclude that here the latitude that La.R.S. 15:1111 places in the Department forecloses Welch's assertion that he was deprived of his due process rights. In sum, no liberty interest is created by La.R.S. 15:1111.

*Id.* at 644 (internal footnotes removed).

Louisiana Revised Statute 15:711(A), which authorizes the sheriff of each parish to "establish and administer a work release program for inmates of any jail or prison under his jurisdiction[,]" is virtually identical to LA. REV. STAT. 15:1111. "Because [LA. REV. STAT. 15:711] did not create an enforceable expectation of placement in a work-release program, it did

not create a liberty interest that is entitled to due-process protection." *James v. Hertzog*, 415 F. App'x 530, 532 (5th Cir. 2011).

Here, because Plaintiff lacks a liberty and property interest, he does not state a claim for denial of due process. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). Accordingly, Plaintiff's due process claims should be dismissed.

**3. Equal Protection**

Plaintiff suggests that, by refusing to approve him for work release but approving other prisoners who have lengthier sentences, who have committed sex crimes, and who have committed crimes more severe than the crime to which he pled guilty, Defendants violated his right to equal protection. [doc. #s 1, pp. 3, 6; 1-2, pp. 1-2]. He alleges that Defendants have approved work release for other prisoners who committed robbery, rape, murder, and other "aggravated felony charges." [doc. # 1, p. 5]. He maintains that Defendants are discriminating against him and "all sex offenders . . . ." [doc. # 1-2, p. 1].

To establish an equal protection claim, a plaintiff must allege that defendants treated "two or more classifications of similarly situated persons" differently.[3] *Duarte v. City of Lewisville, Texas*, 858 F.3d 348, 353 (5th Cir. 2017) (quoting *Gallegos–Hernandez v. U.S.*, 688 F.3d 190, 195 (5th Cir. 2012)). "Once that threshold element is established, the court then determines the

---

[3] "[T]here is no precise formula to determine whether an individual is similarly situated to comparators." *Lindquist v. City of Pasadena Texas*, 669 F.3d 225, 233 (5th Cir. 2012) (internal quotation marks and quoted source omitted). "The inquiry is case-specific and requires [courts] to consider the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant in making the challenged decision." *Id.*

6

appropriate level of scrutiny to apply." *Id.* "Strict scrutiny is required if the [] classification operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution." *Id.* at 354 (quoting *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995)). "If neither a suspect class nor a fundamental right is implicated, the classification need only bear a rational relation to a legitimate governmental purpose." *Id.* "Under rational basis review, differential treatment must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."[4] *Hines v. Aldredge*, 783 F.3d 197, 202-03 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Madriz–Alvarado v. Ashcroft*, 383 F.3d 321, 332 (5th Cir. 2004)).

Here, Plaintiff intimates that Defendants classified prisoners into sex offenders and other offenders and then, even though sex offenders are eligible for work release, approved work release for only non-sex offenders. Apart from the fact that they are all incarcerated, however, Plaintiff does not describe how he is similarly situated to non-sex offenders who were granted work release. For instance, he does not specify that, aside from being non-sex offenders, those granted work release share: his criminal history, convictions for crimes with similar degrees of

---

[4] "[T]he Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification." *Duarte*, 858 F.3d at 355. "As long as there is a conceivable rational basis for the official action, it is immaterial that it was not the or a primary factor in reaching a decision or that it was not actually relied upon by the decisionmakers or that some other nonsuspect irrational factors may have been considered." *Id.* (quoted source omitted). In other words, "[t]he actual reason for a state action is irrelevant for claims reviewed under rational-basis scrutiny and will be upheld if 'any state of facts reasonably may be conceived to justify [its discrimination].'" *Newman Marchive P'ship, Inc. v. Hightower*, 349 F. App'x 963, 965 (5th Cir. 2009) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)).

violence, his sentence, his institutional record, his behavioral history while confined, his work history, his mental and physical condition, his age, similar lengths of confinement, risks of escape, or any other factors that prison officials, in their discretion,[5] could consider in determining whether to grant work release.  See *Stevenson v. Louisiana Board of Parole*, 265 F.3d 1060 (5th Cir. 2001) ("Although [the plaintiff] asserts that the other prisoners who were eligible . . . were similarly situated to him, Stevenson has not demonstrated that their criminal records and offenses were sufficiently similar to his circumstances . . . [and it] is also obvious that the discretionary decision to grant parole must be made on a case-by-case basis based on the unique circumstances of each prisoner.").[6]

Even assuming Plaintiff alleged that he was similarly situated to non-sex offenders who were granted work release, Plaintiff fails to state a plausible claim.  He does not allege that he is

---

[5] See *Rodgers v. Leblanc*, 2017-1724 (La. App. 1 Cir. 6/4/18), 252 So. 3d 948, 949–50 ("Although Section 15:1111 contains certain inmate eligibility requirements, inmate participation [in work release] is specifically reserved to the discretion of DPSC.").

[6] See also *Rowe v. Cuyler*, 534 F. Supp. 297, 301 (E.D. Pa.), aff'd, 696 F.2d 985 (3d Cir. 1982) ("[N]o two prisoners, being different human beings, will possess identical backgrounds and characters.  Indeed, it is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics. Furthermore, whether or not an inmate is able to benefit from participation in pre-release is inherently a subjective determination not susceptible of mathematically precise analysis.").

a member of a suspect class[7] or that Defendants' actions implicated his fundamental rights.[8] Moreover, granting work release to only non-sex offenders is rationally related to a legitimate governmental interest.

In *Finley v. Staton*, 542 F.2d 250, 250 (5th Cir. 1976), the plaintiff raised "an equal protection objection to the state's administrative requirement that sex offenders obtain special certification by the Board in order to be eligible for work release." The United States Court of Appeals, Fifth Circuit held that there was "no merit to [the plaintiff's] claim that this requirement amounted to unconstitutional discrimination against sex offenders." *Id.*

For support, the Fifth Circuit cited *Wagner v. Holmes*, 361 F. Supp. 895, 896 (E.D. Ky. 1973), in which an inmate assailed the constitutionality of a statute prohibiting certain offenders–including sex offenders–from being "released for work outside of the walls of the prison." Finding "no possible constitutional infirmity in" the challenged statute, the court reasoned that it was " well within the province of the legislature to establish varying degrees of punishment for different offenses." *Id.* The court added:

> [The statute] focuses upon those prisoners who, because of their conviction for violent offenses or propensity for escape, would be most likely to abuse the temporary freedom of the work release program by attempting escape or causing further violence.

Although inmates retain many constitutional guarantees, certain attributes of

---

[7] See *Brown v. Dretke*, 184 F. App'x 384, 385 (5th Cir. 2006) (finding that the plaintiff "did not show that sex offenders are a suspect class . . . ."); *Breshears v. Garrett*, 143 F. App'x 570, 572 (5th Cir. 2005); *Carson v. Johnson*, 112 F.3d 818, 821-22 (5th Cir. 1997) ("Neither prisoners nor indigents constitute a suspect class.").

[8] "Participation in an outside work release program is . . . a privilege, not a right . . . ." *Wagner v. Holmes*, 361 F. Supp. 895, 897 (E.D. Ky. 1973) (cited with approval by *Finley v. Staton*, 542 F.2d 250, 250 (5th Cir. 1976)).

citizenship are necessarily surrendered as an incident of incarceration:

> Criminal activity, it is thought, once proved by legal procedures, fairly works a forfeiture of any rights the curtailment of which may be necessary in pursuit of these ends, such as the right of privacy, association, travel, and choice of occupation.

*Id.*

Distilled, approving or refusing work release to prisoners based on their statuses as sex offenders or non-sex offenders is rationally related to the legitimate government interest of preventing sex offenders from abusing the temporary freedom of work release and committing another sex crime. See *Brown v. Dretke*, 184 F. App'x 384, 385 (5th Cir. 2006) (holding that subjecting sex offenders "to different parole procedures is reasonably related to legitimate penological interests."); *Bell v. Woods*, 382 F. App'x 391, 392 (5th Cir. 2010) (finding "rational reasons why the State might restrict sexual offenders from using computers[,]" including preventing "sexual offenders from attempting to obtain and distribute sexually-explicit material over the Internet and contact[ing] potential victims over the internet."). Accordingly, Plaintiff's equal protection claim should be dismissed.

To the extent Plaintiff claims that he was treated differently than *all* other inmates, including other sex offenders, "[a]n equal protection claim that is premised on differential treatment but not based on membership in a suspect class or the infringement of a fundamental right may be cognizable as a so-called 'class of one.'" *Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016). "[T]he plaintiff must show that (1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Id.*

Here, apart from sharing a sex-offender classification, Plaintiff does not describe how he

10

is similarly situated to other sex offenders who were granted work release. In this respect, Plaintiff's claim is conclusional. See *Bell*, 382 F. App'x at 392 ("Bell's allegations that he has been treated differently than other similarly situated sex offenders are conclusional. He does not identify any other prisoners who were sexual offenders and were allowed to enroll in computer courses, nor has he alleged that other prisoners were convicted of the same offense as he was or that they were allowed into the same courses for which he applied."); *Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018) ("Rountree's equal-protection claim fails because he did not sufficiently allege that he has been treated differently from others similarly situated. His complaint generally alleges that other similarly situated individuals were treated differently, but he points to no specific person or persons and provides no specifics as to their violations.").

Even assuming Plaintiff did plausibly allege that he is similarly situated to other sex offenders who were granted work release, Plaintiff's alleged circumstances are excepted from a "class of one" claim. To explain, participation in work release "is specifically reserved to the discretion of DPSC." *Rodgers*, 252 So. 3d at 949-50. In that respect, "'treating like individuals differently is an accepted consequence'" when the form "'of state action . . . which by [its] nature involve[s] discretionary decisionmaking based on a vast array of subjective, individualized assessments.'" *Wood*, 836 F.3d at 541 (quoting *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008)). "It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized." *Engquist*, 553 U.S. at 604. For this reason, Plaintiff's putative "class of one" equal protection claim should be dismissed.[9]

---

[9] See *Engquist*, 553 U.S. at 605 ("[W]e have never found the Equal Protection Clause implicated in the specific circumstance where, as here, government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational

**4. Cruel and Unusual Punishment**

To the extent Plaintiff claims that Defendants violated the Eighth Amendment by refusing to approve him for work release, he fails to state a plausible claim. "Punishment rises to the level of cruel and unusual only if it involves an unnecessary and wanton infliction of pain. Needless to say, denial of the right to participate in a work-release program falls far short of that." *Hertzog*, 415 F. App'x at 533. This ostensible claim should be dismissed.

**5. Access to Classes and Programs**

Plaintiff claims, tacitly, that Defendants denied him due process by refusing to place him in more than one rehabilitation, reentry, or "good time class[]." Plaintiff, however, has no constitutional right to participate in these classes. *McBride v. Powers*, 364 F. App'x 867, 870-71 (5th Cir. 2010) (holding that the plaintiff "failed to state a claim for violation of his equal protection or due process rights, as inmates have no constitutional right to participate in rehabilitative or educational programs while incarcerated."); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) ("[A] state has no constitutional obligation to provide basic educational or vocational training to prisoners."); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (holding that the "loss of the opportunity to earn good-time credits" is a "speculative, collateral consequence[]" of a prison administrative decision and does "not create [a] constitutionally protected liberty interest[]."); *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (holding that the loss of a prison job did not implicate the prisoner's liberty interest even though

---

manner."); *Rountree*, 892 F.3d at 684 ("[I]t would be incompatible to allow an equal protection claim on the ground that one person received a discretionary punishment and another did not, 'even if for no discernable or articulable reason.'") (quoting *Engquist*, 553 U.S. at 604).

the prisoner lost the ability to automatically accrue good-time credits).[10]  Accordingly, this claim should be dismissed.

**6. Copying Legal Mail**

Plaintiff claims that officers are copying his legal mail, keeping the original mailings, and providing him only the copies. [doc. # 10].  Plaintiff, however, fails to state a plausible claim on which relief can be granted because "prison officials may open incoming legal mail to inspect it for contraband." *Jones v. Mail Room Staff*, 74 F. App'x 418, 419 (5th Cir. 2003) (citing *Brewer v. Wilkinson*, 3 F.3d 816, 820-21 (5th Cir. 1993)).  Similarly, "prisoners do not have a constitutional right to be present when privileged, legal mail is opened and inspected." *Collins v. Foster*, 603 F. App'x 273, 275 (5th Cir. 2015) (citing *Brewer*, 3 F.3d at 825).

Relatedly, Plaintiff also alleges that officials copied mail he received from this Court, kept the originals, and gave him the copies.  This claim should be dismissed because Plaintiff does not seek any relief for these alleged actions.  Assuming that Plaintiff did seek relief, he fails to state a claim on which relief can be granted.

Plaintiff's allegations implicate both his right of access to courts and his right to free speech.  See *Walker v. Navarro Cty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993).  To succeed on a claimed denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (holding that to state a

---

[10] See *Cobb v. Whittington*, 2016 WL 1019466, at *3 (W.D. La. Feb. 16, 2016), report and recommendation adopted, 2016 WL 1057498 (W.D. La. Mar. 14, 2016) ("While prisoners who are entitled to release on mandatory supervision have a protected liberty interest in previously-earned good-time credits they are not constitutionally entitled to earn such credits.").

sufficient claim of denial of access to the courts, plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353. Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983. *Id.* at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)). Here, Plaintiff does not allege that he lost an actionable claim or that a defendant prevented him from presenting a claim to any court.

As to Plaintiff's free speech allegation, he fails to allege that he suffered any cognizable harm for which the Court can grant relief. See *Sandoval v. Fox*, 135 F. App'x 691, 691 (5th Cir. 2005) (affirming dismissal of a plaintiff's claim that guards improperly distributed prison mail because the plaintiff was not deprived of his mail and did not otherwise suffer any actual harm); see also *Northup v. Bell*, 2012 WL 2814307, at *4 (E.D. Tex. June 12, 2012), report and recommendation adopted, 2012 WL 2813973 (E.D. Tex. July 9, 2012) (dismissing a claim because the inmate "failed to show any harm as a result of the alleged practice of handing out mail without checking ID's."). Plaintiff alleges that officials gave him only copies of mail from this Court. However, any documents that the Court sent Plaintiff were themselves copies and did not, for example, contain original signatures. In other words, officials kept the original copies, and Plaintiff received copies of those copies. Accordingly, Plaintiff's claims relative to copying and retaining his legal mail should be dismissed.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Kenneth Keith Milton's claims be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 10th day of April, 2019.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE